UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SANCHEZ,<br><br>  Plaintiff,<br><br> v.<br><br>CITY OF ATHERTON, et al.,<br><br>  Defendants. | Case No. 22-cv-03106-JSW<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND MOTION FOR JOINDER**<br><br>Re: Dkt. Nos. 25, 27, 28 |

Now before the Court for consideration is: (1) the motion to dismiss filed by Defendants County of San Mateo, Kenneth Clayton, and Kelly Smith (collectively, "San Mateo Defendants") (Dkt. No. 25), and (2) the motion to dismiss filed by Defendants Town of Atherton, City of Redwood City, City of San Mateo, Kendrick Cochran, Joseph Hickman, and Kenneth MacDonald (collectively, "Redwood City Defendants").[1]  The Court has reviewed the parties' papers, relevant legal authorities, and the record in the case, and it finds this matter suitable for disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court GRANTS the motions to dismiss WITH LEAVE TO AMEND.

**BACKGROUND**

On May 30, 2020, Plaintiff Daniel Sanchez ("Plaintiff") was observing the demonstrations in response to the killing of George Floyd at Frank Ogawa Plaza in Oakland.  (Compl. ¶ 18.) Plaintiff alleges that officers from the Atherton Police Department, San Mateo Police Department, San Mateo Sheriff's Office, Redwood City Police Department, and Contra Costa Office of the

---

[1] Defendants County of Contra Costa, Michael Marshall, and Zachary Williams ("Contra Costa County Defendants") moved to join the motions to dismiss.  (Dkt. No. 28.)  The Court GRANTS the request for joinder.

Sheriff were present at the demonstration. (*Id.*) Plaintiff alleges on information and belief that an unidentified officer aimed and deployed a 40MM Direct Impact Round at Plaintiff in violation of Oakland's Training Bulletin III-G, which hit him in his left eye. (*Id.* ¶ 22.) Plaintiff alleges all officers of the mutual aid agencies present at the demonstration, including Defendants, were briefed on training bulletin prior to their engagement with the demonstrators. (*Id.* ¶ 25.) Plaintiff alleges on information and belief that individual defendants Kenneth MacDonald of Atherton Police Department, Joseph Hickman of San Mateo Police Department, and Zachary Williams of Contra Costa Sheriff's Office deployed 40MM Direct Impact Rounds and may have deployed the munition that ultimately injured him. (*Id.* ¶¶ 28-30.) Plaintiff also alleges on information and belief that Kenneth Clayton, Kelly Smith, Kendrick Cochran, and Michael Marshall authorized and directed their subordinates to deploy the munition that ultimately hit Plaintiff. (*Id.* ¶¶ 30-34.) Plaintiff alleges that as a result of the deployment of the direct round, he underwent emergency surgery and suffered fractures to his face, a tear in his left eyeball, and a detached retina. (*Id.* ¶ 35.) He is now permanently blind in his left eye. (*Id.*)

Plaintiff brings six causes of action: (1) a claim for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. section 1983 ("Section 1983") against the individual officers; (2) a claim for deprivation of his right to free speech in violation of the First Amendment pursuant to Section 1983 against the individual officer defendants; (3) a claim for failure to intervene pursuant to Section 1983 against the individual officer defendants; (4) a claim for supervisory liability pursuant to Section 1983; (5) a claim for failure to train and supervise pursuant to Section 1983; and (6) a claim for state-created danger in violation of the Fourteenth Amendment pursuant to Section 1983.[2] (*Id.* ¶¶ 36-56.)

**ANALYSIS**

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

---

[2] In his opposition brief, Plaintiff voluntarily dismissed with prejudice his sixth claim for relief for state-created danger under the Fourteenth Amendment. (*See* Dkt. No. 33 at 1:7-9.) Accordingly, this claim is dismissed, and the Court will not address it further in this Order.

pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *Id.* The Court may review matters that are in the public record, including pleadings, orders, and other papers filed in court. *See id.*

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

**B.     The Doctrine of Claim Splitting Does Not Bar Plaintiff's Complaint.**

The San Mateo Defendants, Redwood City Defendants, and Contra Costa Defendants move to dismiss Plaintiff's complaint in its entirety as barred by the claim-splitting doctrine. Under the doctrine of claim splitting, "[p]laintiffs generally have 'no right to maintain two

separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). The Defendants argue that the claim-splitting doctrine applies because the causes of action and relief sought here are the same as in *Anti Police-Terror Project,* Case No. 20-cv-03866-JCS (N.D. Cal. 2020) ("Oakland action"), a case several plaintiffs, including Sanchez, brought against Oakland relating to the city's response to the George Floyd demonstrations. Defendants also argue the parties here are privies to the Oakland action.

There is no meaningful dispute that this case and the Oakland action share the same transactional nucleus of operative fact—both arise out of the same set of facts and events that occurred in Oakland in response to the demonstrations over the killing of George Floyd. However, the Defendants in this case are not parties to the Oakland action. Defendants argue that although they are not parties to the Oakland action, privity exists between them and the Oakland action defendants and thus, application of the claim-splitting bar is appropriate.

In *Adams*, the Ninth Circuit explained that the privity requirement of claim preclusion could be met even in cases where the parties in the second action differed if there was a "virtual representation" of the party in the first action. 487 F.3d at 691-92. "[T]he necessary elements of virtual representation are an identity of interests and adequate representation." *Id.* at 691. Virtual representation also can include "a close relationship, substantial participation, and tactical maneuvering." *Id.*

Defendants have not established these elements exist here. There is nothing in the record that suggests that the Defendant entities here participated in the Oakland action or have a close relationship with the defendants in the Oakland action. Defendants also have not shown that their interests are aligned with the defendants in the Oakland action, such that they would have been virtually represented in that action. Nor is there evidence of tactical maneuvering on the part of Plaintiff. For example, it does not appear that Plaintiff is attempting to use this lawsuit as a way to circumvent an adverse ruling in the Oakland case.

Thus, the Court finds the doctrine of claim-splitting does not bar Plaintiff's complaint and denies the motions to dismiss on this basis.

4

### C. The Court Grants the Motions to Dismiss.

#### 1. Official Capacity Claims

"An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). When both a municipal officer and a local government entity are named, and the officer is named in an official capacity, the court may dismiss the officer as a redundant defendant. *Id*. (citing *Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991). Here, Plaintiff brings claims against the individual defendants in their official capacities as well as individual capacities. (*See* Compl. ¶¶ 10-16.) Because the individual defendants are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, the official capacity claims against the individual defendants are duplicative and are dismissed without leave to amend. *See, e.g.*, *Sanderlin v. City of San Jose*, No. 20-CV-04824-BLF, 2021 WL 2662094, at *2 (N.D. Cal. June 29, 2021); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1114 (E.D. Cal. 2012).

#### 2. Causation

In a Section 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). To satisfy the causation requirement, the plaintiff must establish both causation-in-fact and proximate causation. *Harper*, 533 F.3d at 1026. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir.1988).

Here, Plaintiff alleges that an unidentified officer from one of the defendant mutual aid law enforcement entities deployed the direct impact round that injured him. However, Plaintiff's bare allegations are insufficient to satisfy the causation requirement. Plaintiff does not allege facts

establishing that any of the named Defendants actually caused his harm. Plaintiff alleges the Defendants were present at the demonstrations, but the Court cannot infer liability from mere presence. Plaintiff does not allege that he was in close proximity to any of the Defendants, that he interacted with them prior to his injury, and he does not offer any details that would permit a causal inference. Moreover, Plaintiff does not meaningfully explain how he can have a valid claim against all Defendants when it is undisputed that only one projectile caused him harm. Absent allegations showing a causal nexus between Plaintiff's injury and any of the named Defendants, Plaintiff's Section 1983 claims fail.

Plaintiff concedes that he is unable to identify the officer who caused his harm and does not dispute that only one officer can be responsible for deploying the round that caused his injury. However, he contends that he has satisfied his pleading burden because he has identified at least three individual defendants who deployed rounds and five departments with officers present at the demonstration. Plaintiff thus suggests that he should be entitled to seek relief for his injury from officers that were present at the demonstrations even though he cannot identify which officer or department, if any, caused his injury. This argument relies on the doctrine of *res ipsa loquitur*, which permits a factfinder to infer that negligence caused plaintiff's injury. *See Fisher v. Smith*, No. CV-708109-MMC-RCx, 2009 WL 10698988, at *6 n. 53 (C.D. Cal. Feb. 2, 2009). But *res ipsa* is inapplicable here because negligence is insufficient to establish liability for Section 1983 claims. *Id.*; *see also Brown v. City & Cnty. of San Francisco*, No. C 11-02162 LB, 2011 WL 5025138, at *5 (N.D. Cal. Oct. 20, 2011) (finding doctrine of *res ipsa* inapplicable to Section 1983 claim for excessive force).[3]

Plaintiff also argues the failure to identify the specific officer who caused his injury is not

---

[3] *See also English v. Murphy,* No. 1:09-cv-866, 2013 WL 1465321 at *5 (M.D.N.C. Apr.11, 2013) ("In other words, despite failing to allege an affirmative act (or omission) on the part of any specific Defendant, Plaintiff appears to contend that, because these individuals were on duty at the relevant time in a small facility, they must have played some role in the alleged events. Such allegations do not support a claim under the high standard of deliberate indifference"); *Clark-Murphy v. Foreback,* 439 F.3d 280, 286 (6th Cir. 2006) (holding that *res ipsa loquitor* could not be used to prove deliberate indifference because the standard is not negligence) (emphasis in original); *Hunt ex rel. Chiovari v. Dart,* 754 F.Supp.2d 962, 977 (N.D. Ill. 2010) ("[T]he [*res ipsa loquitor*] doctrine is confined to negligence cases ... and this is a constitutional tort case in which the plaintiff must prove intent.").

6

fatal to his Section 1983 claims because he has alleged sufficient facts to demonstrate discovery will lead to the identity of the officer responsible for his injury.  In so arguing, Plaintiff relies on cases regarding Doe defendants.  Although the use of Doe defendants is generally disfavored, in circumstances where "the identity of the alleged defendants will not be known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citations omitted).  Such circumstances are not present here.  Here, Plaintiff has identified three individual officers by name who deployed rounds around the time and place of his injury, but he cannot allege which of them deployed the injury-causing round.  Thus, Plaintiff's reliance on cases involving Doe defendants is unpersuasive.

Moreover, the Court disagrees that Plaintiff has alleged sufficient facts demonstrating that discovery will uncover the identity of the officer who deployed the round that injured him.  There are no facts in the complaint suggesting that discovery will enable Plaintiff to uncover the identity of the officer who injured him.  Indeed, the record suggests the opposite.  Specifically, Plaintiff's counsel attests that he obtained reports, records, and bodycam footage from the agencies present at the demonstrations through his participation in the Oakland action.  (Declaration of Andrew Chan Kim ("Kim Decl.") ¶ 2.)  Even with the benefit of this discovery, Plaintiff has not been able to identify the officer or entity responsible for his injury.  Thus, it appears unlikely that further discovery would assist Plaintiff, and Plaintiff has made no convincing argument to the contrary.

Plaintiff's failure to sufficiently allege causation is an overarching defect that renders his Section 1983 claims subject to dismissal.  However, Plaintiff's claims are deficient for other reasons, which the Court discusses below.  In the event Plaintiff chooses to amend, Plaintiff must correct these defects as well.

### 3. Free Speech

Defendants argue that Plaintiff's Section 1983 claim for deprivation of the right to free speech fails because Plaintiff was not involved in any protected free speech.  The San Mateo Defendants further argue that the claim fails because, to the extent there is any protected activity,

Plaintiff has not identified a causal relationship between the activity and the alleged adverse action.

To demonstrate a First Amendment violation, Plaintiff must allege (1) he was engaged in a constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendants' conduct. *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 398 (N.D. Cal. 2021) (citing *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 827 (9th Cir. 2020)).

"[T]he right to protest—including activities such as 'demonstrations, protest marches, and picketing'—is clearly protected by the First Amendment." *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1212 (W.D. Wash. 2020) (quoting *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996)). However, an act that may not literally constitute "speech" does not necessarily deprive the activity of First Amendment protection. The Ninth Circuit has held that "[t]he First Amendment protects the right to photograph and record matters of public interest. This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (citing *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

Here, Plaintiff alleges that he was an observer of the protests, not a protester himself. (*See* Compl. ¶ 1.) He alleges he "observed demonstrators peacefully confronting a line of officers" and that he was "peaceful and not immediately near the demonstrators." (*Id.* ¶¶ 19, 24.) Defendants contend that the act of observing police officers interacting with peaceful demonstrators is not a constitutionally protected activity. That is, Defendants' position appears to be that the First Amendment does not protect silent observation unless accompanied by an express challenge to the police. However, given that the Ninth Circuit protects the recording of police engaged in official duties, it follows that the act of observing them, which would necessarily be part of recording them, would also be protected under circumstances such as these. Nor do the Ninth Circuit's cases require that the act of recording be done with the intent to challenge or criticize police

8

conduct in order to constitute speech. Applying that logic here, it seems that Plaintiff's act of observing the police engaged in official duties would be protected by the First Amendment. *See Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) ("The robust consensus of cases of persuasive authority suggests that, if the constitution protects one who records police activity, then surely it protects one who merely observes it—a necessary perquisite to recording."). The Court finds that Plaintiff has sufficiently alleged activities that may be covered under the umbrella of the First Amendment.

To succeed on his First Amendment claim, Plaintiff must also allege that the Defendants' actions were "substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000) (quotations omitted); *see also Mendocino Environmental Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). Plaintiff has failed to do so. Plaintiff does not allege facts showing that Plaintiff's conduct—observing the protests from a distance—motivated the deployment of a direct impact round against him. There are no facts alleged in the complaint that would permit the Court to infer that any of the Defendant officers were motivated by a desire to deter Plaintiff from observing police activity or protests in the future. Indeed, Plaintiff fails to allege any interactions between him and the Defendant officers who allegedly fired the rounds that may have injured him. This distinguishes the instant case from those cited by Plaintiff, both of which involved plaintiff protestors who submitted evidence or alleged specific facts that permitted the inference that the officers were motivated by a desire to deter the constitutionally protected activity.

The Court grants the motions to dismiss Plaintiff's Section 1983 claims based on a deprivation of the right to free speech. First Amendment claims.

### 4. Failure to Intervene

Defendants also contend that Plaintiff's Section 1983 claim for failure to intervene fails because Plaintiff has not alleged there was an opportunity to intercede. Officers can be held liable for failure to intervene when their fellow officers violate the constitutional rights of a citizen in their presence, only if they have a "realistic opportunity" to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289-1290 (9th Cir. 2000). Where events unfold rapidly and come without warning,

there is no realistic opportunity to intercede, and thus no failure to intervene. *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).

Here, Plaintiff alleges that the officers "indiscriminately deployed" rounds "without verbal warning." (Compl. ¶ 21; *see id.* ¶ 23.) Plaintiff further alleges that the deployment was unauthorized, occurred without "verbal warnings of the imminent use of munitions, and did not provide sufficient time for demonstrators and observers to disperse." (*Id.* ¶ 27.) Thus, Plaintiff has not plausibly alleged the Defendants had a realistic opportunity to intervene because he alleges that the deployment occurred without warning. The Court grants the motion to dismiss the failure to intervene claim.

### 5. *Monell* Liability

"A government entity may not be held liable under Section 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Id.* (citation omitted).

A plaintiff may establish *Monell* municipal liability under Section 1983 even where the municipality does not expressly adopt the alleged policy. *See Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). There are three alternative ways such liability can attach: (1) "if an employee commits a constitutional violation pursuant to a longstanding practice or custom;" (2) "when the person causing the violation has final policymaking authority;" or (3) "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[I]t is not enough for a Section 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."

*Id.* At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

### a.  Policy or Practice

A municipality is liable under Section 1983 only if the plaintiff can establish that the local government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. County of Los Angeles,* 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694-95). Here, Plaintiff does not sufficiently identify any specific policy or practice that caused Plaintiff's alleged constitutional injury. The sole training policy referenced in the complaint is Oakland's Training Bulletin III-G. Plaintiff alleges all officers present at the demonstrations were briefed on this policy. Plaintiff alleges the Training Bulletin prohibits the use of foam-tipped projectiles except in exigent circumstances and only upon the approval of the Oakland Police Department Incident Commander and that the deployment of rounds that caused his injury happened in violation of the Training Bulletin. (Compl. ¶¶ 26-27.) Thus, the Training Bulletin was not the "moving force" behind Plaintiff's injury and cannot be the policy supporting *Monell* liability here. Nor does Plaintiff sufficiently identify any other policy or practice. Accordingly, the Court dismisses Plaintiff's *Monell* claims to the extent they are based on an alleged unconstitutional custom or practice.

### b.  Failure to Train

To prevail on a claim for failure to train, the plaintiff must show that the official was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 59 (2011)). Under this standard, the plaintiff must allege facts to show that the official "'disregarded [the] known or obvious consequence' ... that a particular omission in their training program [would cause] [municipal] employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61 (quoting *Bd. of the*

11

*Cnty. Comm'rs*, 520 U.S. at 407). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Canton*, 489 U.S. at 389. The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy. *Id.* at 390. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.

Thus, to establish a claim for failure to train, a plaintiff must allege that (1) the existing training program is inadequate "in relation to the tasks the particular officers must perform"; (2) the failure to train "amounts to deliberate indifference to the rights of persons with whom the officers come into contact"; and (3) that the inadequacy of the training "actually caused" the purported constitutional deprivation. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

Plaintiff alleges that the Defendants "failed in their obligation to adequately train and supervise all participating mutual aid officers to refrain from using excessive force against persons, including Mr. Sanchez, exercising their constitutional rights and subjecting such persons to excessive force." (Compl. ¶ 51.) Plaintiff alleges that as a result, the Defendants "were deliberately indifferent to the obvious consequences of their failure to train, supervise and discipline participating mutual aid officers." (*Id.* ¶ 52.)

Plaintiff's failure to train allegations are deficient. As discussed above, Plaintiff does not identify any municipal policy or training program that could serve as basis for his failure to train theory. In opposition, Plaintiff asserts that he brings his failure to train theory on the alternative basis that the "mutual aid partners were not trained because they lacked a policy requiring them to be trained on the policies of the requesting municipality." (Opp. at 11.) This vague assertion is insufficient. Plaintiff does not include specific allegations about the training that was deficient, how it was deficient, and does not allege how training deficiencies resulted in the alleged constitutional violations. Moreover, there are no facts supporting the conclusory assertions that the Defendants were "deliberately indifferent to the obvious consequences of their failure to train"

or suggesting that there was a pattern of similar constitutional violations by untrained employees.

Plaintiff argues that a pattern of constitutional violations by untrained employees need not be shown where the violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. *See Sommers v. City of Santa Clara*, No. 17-cv-04469-BLF, 2021 WL 326931 (N.D. Cal. Feb. 1, 2021) ("[D]emonstrating a pattern of constitutional violations is not necessary where a violation of federal rights may be highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."). Plaintiff appears to suggest that the protests were one such recurring situation that Defendants were not equipped to manage based on their failed training. This argument fails because Plaintiff does not sufficiently allege that the Oakland protests were a recurring situation. Plaintiff contends in his opposition that his injury occurred on the second night of protests, but this fact is not alleged in the complaint. Nor does Plaintiff allege that any of the Defendants were present as mutual aid agencies on the first night of protests. Thus, Plaintiff's attempt to argue around pleading a pattern of similar constitutional violations falls short.

The Court dismisses Plaintiff's *Monell* claim based on a failure to train.

### 6. Supervisory Liability

Under Section 1983, a supervisor can be held liable in his or her individual capacity "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

Plaintiff alleges that the supervising officer Defendants "directed and/or set in a motion a

series of acts by their subordinate officers that they or should have known would cause harm to Mr. Sanchez" and in the alternative, "engaged in conduct that showed a reckless or callous indifference to Mr. Sanchez's rights, or failed to act, which caused their subordinates to deprive Mr. Sanchez of his rights."  (Compl. ¶¶ 47-48.)  These allegations are conclusory, and the complaint lacks any factual allegations supporting the inference that any of these Defendants was personally involved in the use of force that caused Plaintiff's injury or that there was a causal connection between a supervisor's wrongful conduct and the purported constitutional violation.

Accordingly, the Court dismisses Plaintiff's supervisory liability claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss.  The Court cannot say amendment would be futile, and thus grants the motions WITH LEAVE TO AMEND, with the exception of the official capacity claims, which are dismissed WITHOUT LEAVE TO AMEND.  Plaintiff shall file any amended complaint within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: January 9, 2023

_____
JEFFREY S. WHITE
United States District Judge