UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SANCHEZ,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ATHERTON, et al.,<br><br>    Defendants. | Case No. 22-cv-03106-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 43 |

Now before the Court for consideration is the motion to dismiss the first amended complaint ("FAC") filed Defendants Town of Atherton ("APD"), City of San Mateo ("SMPD"), San Mateo County ("SMSO"), City of Redwood City ("RCPD"), County of Contra Costa ("CCOS"), Kenneth MacDonald ("MacDonald"), Joseph Hickman ("Hickman"), Kenneth Clayton ("Clayton"), Kelly Smith ("Smith"), Kendrick Cochran ("Cochran"), Michael Marshall ("Marshall"), and Zachary Williams ("Williams") (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court HEREBY GRANTS, IN PART, and DENIES, IN PART, Defendants' motion.

**BACKGROUND**

Plaintiff Daniel Sanchez ("Plaintiff") alleges that on May 30, 2020, officers from APD, SMPD, SMSO, RCPD, and CCOS, acting as mutual aid law enforcement agencies to Oakland and Oakland Police Department ("OPD"), used excessive force while he was peacefully observing the demonstrations in response to the killing of George Floyd at Frank Ogawa Plaza in Oakland. (FAC ¶ 1.) Plaintiff alleges that the mutual aid agencies were briefed by members of OPD and

trained on OPD's Training Bulletin III-G.  (*Id.* ¶ 20.)  The Training Bulletin provides that foam-tipped projectiles, like 40MM Direct Impact Rounds, may only be used in exigent circumstances and only upon approval of the OPD Incident Commander.  (*Id.* ¶ 34.)  Plaintiff alleges Hickman, Clayton, Smith, Cochran, and Marshall deliberately ignored their briefing on OPD's Training Bulletin and authorized the use of 40MM Direct Impact Rounds despite the lack of authorization from OPD and the lack of exigent circumstances.  Plaintiff alleges that officers Hickman (SMPD), Officer MacDonald (APD), and Officer Williams (CCOS) fired at least seven 40MM Direct Impact Rounds towards him despite there being no exigency and no authorization from OPD.  Plaintiff alleges that one of the rounds hit him in the eye, leading to permanent blindness in his left eye.  (*Id.* ¶¶ 45-47.)

Plaintiff brings five causes of action:  (1) a claim for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. section 1983 ("Section 1983") against the individual officers; (2) a claim for deprivation of his right to free speech in violation of the First Amendment pursuant to Section 1983 against the individual officer defendants; (3) a claim for failure to intervene pursuant to Section 1983 against the individual officer defendants; (4) a claim for supervisory liability against the city and county Defendants and Defendants Clayton, Smith, and Cochran pursuant to Section 1983; and (5) a claim for failure to train and supervise pursuant to Section 1983 against the city and county defendants and MacDonald, Hickman, Clayton, Smith, Marshall, and Williams.

On January 9, 2023, the Court granted Defendants' motion to dismiss Plaintiff's complaint finding Plaintiff failed to allege sufficient facts to support his claims.  The Court granted Plaintiff leave to amend his claims, except for his official capacity claims, which the Court dismissed without leave to amend.  (*See* Dkt. No. 41.)  Plaintiff filed the FAC on January 30, 2023.

The Court will address additional facts as necessary in the analysis.

### ANALYSIS

**A.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to

2

1  the allegations in the complaint, which are accepted as true and construed in the light most
2  favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even
3  under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's
4  obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and
5  conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*
6  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
7  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead
8  allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim
9  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
10 reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
11 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

12       As a general rule, "a district court may not consider any material beyond the pleadings in
13 ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled*
14 *on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation
15 omitted).  However, documents subject to judicial notice may be considered on a motion to
16 dismiss.  *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other*
17 *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  In doing so, the
18 Court does not convert a motion to dismiss to one for summary judgment.  *Id.*  The Court may
19 review matters that are in the public record, including pleadings, orders, and other papers filed in
20 court.  *See id.*

21       If the allegations are insufficient to state a claim, a court should grant leave to amend
22 unless amendment would be futile.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th
23 Cir. 1990); *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246-47.

24 **B.     The Doctrine of Claim-Splitting.**

25       Defendants again contend that the claim-splitting doctrine applies here because the causes
26 of action and relief sought are the same as in *Anti Police-Terror Project*, Case No. 20-cv-03866-
27 JCS (N.D. Cal. 2020) ("Oakland action").  In the Oakland action, several plaintiffs, including
28 Sanchez, brought a lawsuit against Oakland relating to the city's response to the George Floyd

3

1 demonstrations.  In that case, Sanchez sought relief from Oakland based on the same facts and for
2 the same injury for which he seeks relief here.
3       In the Court's prior order granting Defendants' motion to dismiss, the Court agreed that
4 this case shares the same transactional nucleus of operative fact with the Oakland action.
5 However, the Defendants here are not party to the Oakland action, and the Court concluded that
6 the Defendants in this case were not in privity with the Oakland action defendants.  Thus, the
7 Court rejected Defendants' argument that the claim-splitting doctrine barred Plaintiff's complaint.
8       Under the doctrine of claim-splitting, "[p]laintiffs generally have 'no right to maintain two
9 separate actions involving the same subject matter at the same time in the same court and against
10 the same defendant.'" *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir.
11 2007) *overruled in part on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008).  The doctrine
12 exists to "protect the Defendant from being harassed by repetitive actions based on the same
13 claim." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995).  The doctrine
14 "borrow[s] from the test for claim preclusion[,]" but rather than requiring that the first suit have a
15 final determination on the merits, it "assum[es] that the first suit were already final." *Adams*, 487
16 F.3d at 688-89 (quoting another source).  If a court determines that a party has impermissibly split
17 his claims, it may exercise its discretion to "dismiss [the] duplicative later-filed action, to stay that
18 action pending resolution of the previously filed action, to enjoin the parties from proceeding with
19 it, or to consolidate both actions." *Id.* at 689.  In assessing whether the second action is
20 duplicative of the first, the court examines whether the causes of action and relief sought, as well
21 as the parties or privies to the action, are the same. *Adams*, 487 F.3d at 689 (internal citation
22 omitted).
23       In their motion to dismiss the FAC, Defendants again argue that the doctrine of claim
24 splitting bars Plaintiff's claims.  To bolster their argument that Defendants are in privity with
25 Oakland action defendants, Defendants additional documents regarding the mutual aid agency
26 relationship that existed between OPD and the Defendants during the George Floyd

demonstrations.[1]  Defendants rely on these documents to show that Defendants' interests were aligned with the Oakland action defendants and that they were adequately represented in that action.

"Even when parties are not identical, privity may exist if there is 'substantial identity' between the parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081-82 (9th Cir. 2003) (citations omitted); *Shaw v. Hahn,* 56 F.3d 1128, 1131–32 (9th Cir.1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action); *United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980) ("[A] 'privy' may include those whose interests are represented by one with authority to do so."). "[P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1081.

In the prior order on Defendants' motion to dismiss the complaint, the parties' arguments and the Court's analysis of the claim-splitting doctrine addressed the issue of privity under the framework commonly known as "virtual representation" as set forth in *Adams*.  (Dkt. No. 41, Order at 3-4.)  However, the Supreme Court rejected the doctrine of "virtual representation" and clarified the scope of privity for nonparties in *Taylor*.  There, the Supreme Court identified several general categories where privity may exist between a party and a nonparty: (1) the nonparty agrees to be bound by the determination in the first action; (2) the nonparty has a pre-existing substantive legal relationship with a party to the judgment, such as preceding and succeeding owners of property, bailee and bailor, or assignee and assignor; (3) the nonparty was adequately represented in the first action by someone with the same interests; (4) the nonparty assumed control over the litigation in which the judgment was rendered; (5) the nonparty is bringing suit as a representative,

---

[1] Defendants request that the Court take judicial notice of documents from the Oakland action including: (1) the First Amended Complaint; (2) City of Oakland Resolution No.89303 approving the settlement in the Oakland action; (3) California Government Code sections 8615-8619.5; (4) OPD Training Bulletin III-G; (5) California Governor's Office of Emergency Services, Law Enforcement Mutual Aid Plan.  (*See* Dkt. No. 43-1.)  Plaintiff has not opposed the request. Accordingly, the Court takes judicial notice of these matters of public record, which are not subject to reasonable dispute.  *See* Fed. R. Evid. 201.

1  or proxy, of a person who was a party to the previous action; and (6) the nonparty is barred by
2  statute from relitigating an issue already adjudicated. *Id*. at 893-95. [2]

3  Given that the Court's prior analysis was conducted under the virtual representation
4  framework and in light of Defendants' renewed assertion of privity supported by additional
5  submissions regarding the mutual aid agency agreement, the Court finds revisiting the issue of
6  privity prudent.

7  Here, there is no dispute that OPD called upon the Defendants in this action to serve as
8  "mutual aid law enforcement agencies" for the purpose of "join[ing] them in policing the
9  demonstrations." (FAC ¶ 18; *see also* RJN, Ex. 1, ¶¶ 8, 49, 91, 135(2) (alleging that Oakland was
10  responsible for the actions of the members of their mutual aid network including Defendants)). As
11  mutual aid agencies, Defendants acted at the direction and authority of Oakland. *See* RJN, Ex. 3,
12  Cal. Gov't Code § 8618 ("[T]he responsible local official in whose jurisdiction an incident
13  requiring mutual aid has occurred shall remain in charge at such incident, including the direction
14  of personnel and equipment provided him through mutual aid."); RJN, Ex. 4, California
15  Governor's Office of Emergency Services, Law Enforcement Mutual Aid Plan, 2019 Edition at
16  page 18 ("[T]he responsible local law enforcement official of the jurisdiction requesting mutual
17  aid shall remain in charge."); RJN, Ex. 3 Oakland Police Department Training Bulletin III-G,
18  OPD Crowd Control and Crowd Management Policy, revised 10/13/04 , Section IX Mutual Aid
19  and Multi-Agency Coordination. Moreover, in the Oakland action, Plaintiff alleged Oakland's
20  responsibility for the actions of the mutual aid agencies. (RJN, Ex. 1, Compl. ¶ 49.) Additionally,
21  the settlement in the Oakland action contemplated the mutual aid agencies. *See* RJN, Ex. 2 at 2.

22  The Court concludes Defendants have established that APD, SMPD, SMSO, RCPD, and
23  CCOS are in privity with defendants in the Oakland action for purposes of the claim-splitting
24  doctrine. As set forth in the judicially noticeable documents, the relationship between these
25  Defendants and defendants in the Oakland action is analogous to that of principal and agent, which

---

[2] Because the *Adams* court relied on the virtual representation rule, it is no longer good law in that respect, but the *Adams* court's discussion of impermissible claim-splitting otherwise remains precedential. *Citcon USA, LLC v. MaplePay Inc.*, No. 19-CV-02112-NC, 2021 WL 1238231, at *14 (N.D. Cal. Apr. 2, 2021).

6

is a legal relationship that is traditionally recognized as establishing privity. *See Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1115-16 (9th Cir. 2021) (noting trustee, fiduciary, guardian, or agent as "categories of relationships that courts have traditionally recognized as establishing privity."); *see also Hurley v. Southern Cal. Edison Co.*, 183 F.2d 125, 135 (9th Cir. 1950) (noting that privity exists for preclusion purposes between, among others, "principal and agent" and "master and servant"). The Court concludes that on the basis of the mutual aid agency relationship, there was a pre-existing substantive legal relationship between the parties such that Defendants APD, SMPD, SMSO, RCPD, and CCOS meet the privity requirements to satisfy the claim-splitting doctrine. Thus, the claims against Defendants APD, SMPD, SMSO, RCPD, and CCOS are duplicative and subject to claim-splitting doctrine. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citation omitted). The Court, in its discretion, dismisses those claims without leave to amend. *See Adams*, 487 F.3d at 692 (where complaint is duplicative, a court has discretion to dismiss the later-filed complaint with or without prejudice, to consolidate the two actions, or to stay or enjoin proceedings.)

However, Plaintiff's individual capacity and supervisory liability claims against Defendants MacDonald, Hickman, Clayton, Smith, Cochran, Marshall, and Williams are not barred by the doctrine of claim-splitting. These individual defendants were not parties to the Oakland action, and in their individual capacities are not in privity with Oakland. *See Pumphrey v. Battles*, No. 21-cv-09005-JSC, 2022 WL 624441, at *4 (N.D. Cal. Mar. 3, 2022) (finding no privity based on "pre-existing substantive legal relationship" between city and county deputies "because the deputies and the County are subject to different theories and scopes of liability" and "[w]hether the deputies are liable for excessive force is a separate inquiry from whether the County is liable for their conduct."); *Amie v. County of Los Angeles*, CV 15-03134 DMG (PLAx), 2015 WL 13916084, at *6 (C.D. Cal. Nov. 2, 2015) ("[A] decision in [the prior case] that Welle did not act according to a custom or policy of LA County or LASD does not preclude Plaintiffs from bringing a suit against Welle in his individual capacity.").

Thus, although the Oakland action and this matter involve the same plaintiff and same injury, only the city and county Defendants are in privity with the parties in the Oakland action.

7

1    Accordingly, the Court GRANTS Defendants' motion to dismiss as to Defendants APD, SMSO,
2    SMPD, RCPD, and CCOS, and it DENIES the motion as to Defendants MacDonald, Hickman,
3    Clayton, Smith, Cochran, Marshall, and Williams.

**C.    Fourth Amendment Claim.**

Plaintiff's first claim for relief is a claim for unlawful seizure and use of excessive force in violation of the Fourth Amendment against Defendants MacDonald, Hickman, Clayton, Smith, Marshall, Williams, and Cochran pursuant to Section 1983. "Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances." *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir. 2001) (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)). Determining whether a particular use of force is reasonable requires a factfinder to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396 (internal quotation marks omitted).

Plaintiff alleges that defendants Hickman, MacDonald, and Williams fired at least seven 40MM Direct Impact Rounds towards Plaintiff. (FAC ¶¶ 26-29.) Plaintiff alleges that he was hit in eye by one of rounds deployed by Hickman, MacDonald, and Williams. (*Id.* ¶¶ 30-32.) Plaintiff further alleges that use of the 40MM Direct Impact Rounds is authorized only in exigent circumstances and with approval of the OPD Incident Commander, neither of which occurred in the instant case. (*Id.* ¶¶ 33-35.)

While the Court previously found Plaintiff's excessive force claim failed because Plaintiff failed to establish causation and relied on a theory of *res ipsa loquitur*, Plaintiff's amendments cure this defect. Plaintiff has sufficiently alleged that Hickman, MacDonald, and Williams each affirmatively acted by deploying munitions without justification, causing a constitutional deprivation. Contrary to Defendants' assertion, the fact that Plaintiff does not plead which officer of the three caused his precise injury is not fatal to his excessive force claim at this stage, where pleading in the alternative is permissible. *See* Fed. R. Civ. P. 8(d).

Defendants also contend that Plaintiff relies on a theory of "team liability" to plead his Fourth Amendment claim. Under the "integral participation" doctrine, an officer whose own

actions do not rise to the level of a constitutional violation still may be held liable as a participant in the group's unlawful actions. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004). Team liability" protects officers who lack "some fundamental involvement in the conduct that allegedly caused the [constitutional] violation" because they are not integral participants. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007); *see Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (officer who stayed in front yard during unlawful search was not an integral participant because he did not participate in the planning an execution of the search). Plaintiff may not rely on a "team effort" theory to blindly extend liability to all "team" members, including a "mere bystander" who had "no role in the unlawful conduct," *Chuman v. Wright*, 76 F.3d 292., 294-95 (9th Cir. 1996). In contrast, officers who participate in some meaningful way are integral participants. *See Boyd*, 374 F.3d at 780 (finding that officers who provided backup during an unconstitutional search were integral participants where although only one officer deployed the flash-bang device during a search operation, the others stood armed behind him, were aware of and did not object to the use of the device). Courts must look at each officer's individual actions and determine whether he or she played an "integral" role in the constitutional violation. *Id.*

Here, the Court finds that to the extent Plaintiff is asserting a claim for unlawful seizure and excessive force against Defendants Clayton, Smith, Marshall, and Cochran in their individual capacities, the claim fails. Plaintiff alleges that these defendants were in proximity to the shooting officers and in direct communication with them and authorized the deployment of Direct Impact Rounds. Plaintiff also alleges that these Defendants "acted under color of law when they authorized, directed, aimed and/or deployed a 40MM Direct Impact Round at [Plaintiff], causing him to be unlawfully seized." (FAC ¶ 49.) These conclusory allegations lack sufficient supporting facts to establish that these Defendants played an integral role in the alleged constitutional violation. Indeed, in opposition, Plaintiff only defends the sufficiency of his allegations as they pertain to Hickman, MacDonald, and Williams.

For these reasons, the Court DENIES the motion to dismiss the first claim for relief as to Defendants Hickman, MacDonald, and Williams and GRANTS the motion as to Defendants Clayton, Smith, Marshall, and Cochran in their individual capacities.

9

### D. First Amendment Claim.

Plaintiff's second claim for relief is a claim for deprivation of the right to free speech in violation of the First Amendment pursuant to Section 1983 against Defendants MacDonald, Hickman, Clayton, Smith, Marshall, Williams, and Cochran. Plaintiff alleges that he was engaged in constitutionally protected activity by observing the actions of police officers in public when these Defendants "authorized, directed, aimed and/or deployed a 40 MM Direct Impact Round at him for purposes of suppressing his participation in the protest against police brutality." (FAC ¶ 54.)

To demonstrate a First Amendment violation, Plaintiff must allege (1) he was engaged in a constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendants' conduct. *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 398 (N.D. Cal. 2021) (citing *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817, 827 (9th Cir. 2020)).

The Court previously determined that Plaintiff sufficiently alleged that he was engaged in a constitutionally protected activity. There is also no meaningful dispute that Defendants' alleged actions would chill a person of ordinary firmness from continuing to engage in the protected activity. However, in its prior Order, the Court found that Plaintiff failed to allege that the protected activity was a substantial or motivating factor in Defendants' conduct. The Court found that Plaintiff failed to allege specific facts that permitted the inference that the officers were motivated by a desire to deter Plaintiff from observing police activity or protests in the future.

Plaintiff has amended the complaint to allege that in deploying munitions, Defendants Hickman, MacDonald, and Williams were motivated by a desire to disperse all participants, including Mr. Sanchez, and to suppress all speech occurring at Frank Ogawa Plaza, including Mr. Sanchez's lawful presence as an observer. (FAC ¶¶ 27-29.) Plaintiff also alleges, on information and belief, that Defendants Clayton, Smith, Cochran, and Marshall, authorized and directed their subordinate officers to shoot at demonstrators, intending to suppress the protected activity of all persons exercising their First Amendment rights." (*See id.* ¶¶ 40-43.)

Plaintiff relies on *Johnson v. City of Berkeley*, No. 15-cv-05343-JSC, 2016 WL 928723 (N.D. Cal. Mar. 11, 2016) in support of his argument that these allegations are sufficient to plead that the protected activity was a substantial or motivating factor in the defendants' conduct. In *Johnson*, several plaintiffs brought a First Amendment retaliation claim against officers who used excessive force against them during a protest. *Id.* at *5. The court found the allegations of the plaintiffs who were actively protesting or working as journalists sufficient to support the plausible inference that the officers' actions were substantially motivated by the desire to chill the plaintiffs' speech based on their participation in and association with the protest. *Id.* However, the court found that the allegations of one plaintiff were insufficient to support the requisite intent because the complaint did not allege that she was participating in the demonstrations at the time of her encounter with the officers. Rather, she was standing with a crowd "not necessarily as part of the demonstration" when an officer struck her. *Id.* at *6. The court found these facts insufficient to support a plausible inference that the officers' conduct was motivated by a desire to chill that plaintiffs' speech.

Here, Plaintiff alleges that he was observing the demonstrators and stood at a distance from them. Plaintiff alleges that he stood at the north side of 14th Street between Clay Street and Broadway, while the officers were on the south side of the 14th Street and the demonstrators were in the middle of 14th Street. Given the alleged distance between Plaintiff and the officers, and the allegation that Plaintiff was not a part of the demonstration, it is not plausible to infer that Plaintiff's observation of the demonstration was a substantial or motivating factor in the officers' conduct. Nor are Plaintiff's conclusory allegations, based on information and belief, that the officers were motivated by a desire to disperse all participants including Sanchez sufficient to allege the requisite intent. *See Del Valle v. Cnty. of Sonoma*, No. 17-cv-03611-JSW, 2017 WL 11564085, at *7 (N.D. Cal. Oct. 13, 2017) (Pleading on information and belief "does require some showing that the belief underlying the allegations is based on factual information that makes the inference of culpability plausible.") (internal citations and quotations omitted).

Like the observing plaintiff in *Johnson*, Plaintiff's allegations that he stood at a distance from and did not participate in the demonstration are insufficient to establish the third prong of a

11

First Amendment claim. The Court finds Plaintiff's allegations insufficient to plausibly support the inference that Plaintiff's observation of the demonstrators was a substantial or motivating factor in the officers' conduct.

Accordingly, the Court GRANTS the motion to dismiss this claim. In light of Plaintiff's allegations that he observed the demonstrations from a distance and because he was already once afforded the opportunity to amend this claim, the Court finds further amendment would be futile and dismisses the claim without leave to amend.

### E.    Failure to Intervene.

Plaintiff's third claim for relief is a claim for failure to intervene pursuant to Section 1983 against Defendants MacDonald, Hickman, Clayton, Smith, Marshall, Williams, and Cochran. The Court previously dismissed Plaintiff's claim for failure to intervene on the basis that Plaintiff failed to allege there was an opportunity to intercede. Officers can be held liable for failure to intervene when their fellow officers violate the constitutional rights of a citizen in their presence, only if they have a "realistic opportunity" to intercede. *Cunningham v. Gates*, 229 F.3d 1271, 1289-1290 (9th Cir. 2000). Where events unfold rapidly and come without warning, there is no realistic opportunity to intercede, and thus no failure to intervene. *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022).

Plaintiff argues that in dismissing this claim the first time around, the Court wrongly credited Defendants' narrative rather than the allegations in the complaint. Specifically, with regard to the allegations that the munitions were deployed without warning, Plaintiff contends that the allegations establish that it was Sanchez and the protestors who lacked warning; Defendants, whose use of force was authorized and approved by the supervising officers, had warning and an opportunity to intervene. Furthermore, Plaintiff has now amended his allegations to allege that "[a]ll defendants were capable of communicating with each other and had opportunities to deescalate their interactions with peaceful demonstrators." (FAC ¶ 58.) Thus, the Court finds the FAC cures the earlier deficiencies with regard to the failure to intervene. At this stage and accepting Plaintiff's allegations as true, the Court finds these allegations, though sparse, sufficient, and it permits the claim to proceed. *See Gaffett v. City of Oakland*, No. 21-cv-02881-RS, 2021

1  WL 4503456, at *5 (N.D. Cal. Oct. 1, 2021) ("Failing to intervene is an omission: only its absence
2  can be shown.  How else could Plaintiffs plead no officer intervened? While some proof will
3  eventually be required for this claim, e.g., videos or affidavits, for now this claim survives.").
4  Defendants' motion to dismiss the failure to intervene claim is DENIED.

### F.    Supervisory Liability.

Plaintiff's fourth claim for relief is a claim for supervisory liability against APD, SMSD, SMPD, CCOS, RCPD, Clayton, Smith, and Cochran.[3]  Plaintiff alleges that the defendants "personally participated, or directed and/or set in motion a series of acts by their subordinate officers that they knew or should have known would cause harm to [Plaintiff]." (FAC ¶ 61.)  In the alternative, Plaintiff alleges that Defendants "engaged in conduct that showed a reckless or callous indifference to Mr. Sanchez's rights, or failed to act, which caused their subordinates to deprive Mr. Sanchez of his rights." (*Id.* ¶ 62.)

For the reasons stated above with regard to claim-splitting, to the extent the supervisory liability claim is asserted against APD, SMSD, SMPD, CCOS, and RCPD, the claim is dismissed.

Under a theory of supervisory liability, Defendants Clayton, Smith, Cochran, and Marshall can be held liable in their individual capacities if they participated in the deprivation of Plaintiff's constitutional right.  *Larez,* 946 F.2d at 645.  The Court has determined that Plaintiff has sufficiently alleged a claim for excessive force against Hickman, Williams, and MacDonald.  Thus, in order to allege a claim for supervisory liability against the supervisor Defendants, Plaintiff must allege that defendants "set[] in motion a series of acts by others, or…knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08.  Under Section 1983, a supervisor may be individually liable "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous

---

[3] In the claim for relief, Plaintiff names Clayton twice. (FAC ¶¶ 60-63.)  In his arguments regarding supervisory liability in opposition, Plaintiff references Defendant Marshall though but he has not asserted the claim against Marshall.  To the extent Plaintiff intended to assert this claim against Marshall, the Court's analysis and conclusion applies equally to him.

indifference to the rights of others." *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005); *see also Starr*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). Here, Plaintiff makes conclusory statements that the officers "deliberately ignored their briefing on OPD's Training Bulletin III-G and authorized the use of 40MM Direct Impact Rounds despite it not being authorized…and despite no exigent circumstances existing." (FAC ¶ 25.) Beyond that Plaintiff alleges on information and belief that each individual supervising officer defendant "authorized and directed [their] subordinate officers to shoot…at demonstrators in the plaza, intending to suppress the protected activity of all persons exercising their First Amendment rights…despite no exigent circumstances justifying such uses of force." (*Id.* ¶¶ 40-43.)

Without additional information, the Court finds Plaintiff's allegations insufficient to meet Rule 8's pleading standards. For example, Plaintiff has not provided any facts to establish the alleged supervisors, as officers of SMSCO, RCPD, and CCOS and members of mutual aid enforcement agencies, had authority over Hickman, MacDonald, and Williams.[4] Thus, as alleged, the FAC requires the Court to make several inferences about the scope of the supervisors' authority without any facts to support the reasonableness of those inferences. Although the Court does not expect Plaintiff to have exact knowledge of the specific bounds of authority of each officer and department, something more than bare assertions is required to meet Rule 8's standards. Moreover, as stated in its prior Order, Plaintiff's allegations of supervisory liability again lack sufficient factual allegations to support a causal connection between wrongful conduct on the part of the supervisors and the purported constitutional violation.

Accordingly, the Court GRANTS the motion to dismiss this claim. Because Plaintiff was already once afforded the opportunity to amend, the Court finds further amendment would be futile and dismisses the claim without leave to amend.

---

[4] Clayton and Smith were officers of SMCSO, while Cochran was employed with RCPD and Marshall was with CCOS. Officer Hickman was employed with SMPD, Officer MacDonald with APD, and Officer Williams with CCOS. Plaintiff's counsel submits a declaration in support of his opposition attesting that some of the responding personnel from San Mateo County were designated as supervisors and given authority as such. (*See* Dkt. No. 44-1, Declaration of Andrew Chan Kim ¶¶ 2-3.) However, the Court cannot consider counsel's declaration in ruling on the motion to dismiss because it is outside the scope of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).

### G. Failure to Train.

In the fifth cause of action, Plaintiff asserts a Section 1983 claim for failure to properly train and supervise, against APD, SMSD, SMPD, CCOS, RCPD, MacDonald, Hickman, Clayton, Smith, Cochran, Marshall, and Williams. Plaintiff alleges the defendants "failed in their obligation to adequately train and supervise all participating mutual aid officers to comply with OPD's Training Bulletin III-G to refrain from using excessive force against persons" and "were deliberately indifferent to the obvious consequences of their failure to train, supervise and discipline participating mutual aid officers." (FAC ¶ 66.)

The Court interprets this claim as alleging a Section 1983 supervisory liability based on a failure to train against MacDonald, Hickman, Clayton, Smith, Cochran, Marshall, and Williams, in their individual capacities, and as alleging a Section 1983 municipal liability claim under *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978), against Atherton, San Mateo, San Mateo County, Redwood City, Contra Costa County based on a policy or practice. For the reasons stated above with regard to claim-splitting, the claims against the city and county Defendants are dismissed.

With regard to the claims against the supervisory defendants, a supervisor may be liable in an individual capacity if the plaintiff has shown either the supervisor's "personal involvement in the constitutional deprivation" or a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). Here, Plaintiff has not alleged any non-conclusory facts regarding the personal involvement of defendants Hickman, Clayton, Smith, Cochran, Williams, and Marshall to support claim for failure to train based on supervisory liability. Moreover, the allegations Plaintiff has included are contradictory and hard to follow. For example, Plaintiff brings claims against MacDonald, Williams, and Hickman in their individual capacities and alleges that they deployed the injury-causing rounds. However, Plaintiff also alleges that MacDonald and Williams failed to train and supervise but offers no facts establishing that either was in a supervisory role. Additionally, Plaintiff only purports to sue Hickman in his individual capacity, but he elsewhere alleges that Hickman was a supervisor though he offers no facts regarding Hickman's failure to train and supervise.

With regard to the failure to train claim against Clayton, Smith, Cochran, and Williams, the allegations against these defendants are conclusory and not supported by sufficient facts to meet the pleading requirements. *Iqbal*, 556 U.S. at 663 (assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (citing *Twombly,* 550 U.S. at 555); *see also Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ("Even under a 'deliberate indifference' theory of individual liability, the [p]laintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates.").

Accordingly, the Court GRANTS the motion to dismiss this claim. Because Plaintiff was previously afforded the opportunity to amend, the Court finds further amendment would be futile and dismisses the claim without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, and DENIES, IN PART, Defendants' motion to dismiss the first amended complaint:

- Plaintiff's claims against Defendants APD, SMSO, CCOS, SMPD, and RCPD are dismissed without leave to amend;
- Defendant's motion to dismiss the first claim for relief is DENIED as to Defendants MacDonald, Hickman, and Williams, and GRANTED without leave to amend as to all other defendants;
- Defendant's motion to dismiss the second claim for relief is GRANTED without leave to amend;
- Defendant's motion to dismiss the third claim for relief is DENIED;
- Defendant's motion to dismiss the fourth claim for relief is GRANTED without leave to amend;
- Defendant's motion to dismiss the fifth claim for relief is GRANTED without leave to amend.

The Court FURTHER ORDERS the parties to appear for an initial case management

1  conference on November 3, 2023. The parties shall submit a joint case management statement by
2  October 27, 2023.
3  **IT IS SO ORDERED.**
4  Dated: August 29, 2023

_____
JEFFREY S. WHITE
United States District Judge